Kent, Ch. J.
delivered the opinion of the court. The defendant moves for a new trial on the following grounds:
1. Because the time of sailing was when the vessel broke ground at Savannah, with her clearance, - cargo, *and papers on board; 2. Because in fact, she went to sea on the 30th September; 3. Because *116 tbe brig bad a, sick crew, and was detained in tbe rive? two weeks, and these facts were material and ought to have been disclosed, they showing that she was not competently equipped when she sailed. It is admitted as a fact ascertained since the trial, that William Brown, when he wrote the letter stated in the case, was part owner of the brig; and further, that the vessel cleared out at the customhouse at Savannah, for Martinique, on the 15th of September, 1799. 1. As to the inception of the voyage (see Henshaw v. Mar. Ins. Co., post, 274,) by sailing from the port of'Savannah, or from Oockspur; this will depend on the quo animo, or bona fide intent of the party. In the present case, it is very clear the voyage did not commence till the vessel left Oockspur. She left the port of Savannah for a temporary purpose, distinct from the object of the voyage, and the captain was left behind sick. I have no doubt that the sailing in the policy,' when accompanied with the explanatory facts, meant the going to sea from Oockspur. 2. With respect to the real truth of the case, whether the vessel did actually sail from Oockspur prior to the 1st day of October or not; and whether, when she sailed, she had a crew, in point of health, competent for the voyage, there is undoubtedly a contrariety of evidence, and a difficulty in arriving at a satisfactory conclusion. On the one side there is the written testimony of the captain’s letter, and the account of pilotage from James Brown (supposing it to be a true paper) in favor of the allegation, that the vessel must have sailed prior to the time stated in the warranty. On the other side, it was proved by the pilot who conducted the vessel to sea, and supported by the testimony of two other pilots who attended him, that the vessel did not leave Oockspur before the 1st of October. In deciding on the preponderance of these contradictory statements, I feel and acknowledge the force of the remark of Baron Gilbert, that written testimony must, from the nature of man, be of higher credit in the scale of probability; but on the other hand, there are just criticisms to be made respecting these papers, which must bring them down to a level, at least, with the underwritten documents. One is, that seamen reckon at sea from noon to noon, and would naturally date *a letter written at sea before 12 o’clock of the 1st of October, as of the preceding day; and another is, that the pilotage bill was probably mistaken as to figures, and that the 13th was intended for the 15th. If so, that account will correspond with the allegation that the vessel sailed on the 1st of October; and the reason to infer this is, from the facility with which such a mistake as to those figures may arise, and from the fact, that the bills of lading were not signed till the 14th, which would bring it a day after the sailing according to the one construction. The facts respecting the crew’s health seem to be involved in equal uncertainty, and as these were all questions of credibility and fact, proper for the decision of the jury, which were fairly submitted to them, and there is no reason to suppose any new light can be thrown on the subject, and the best informed man may, and would, probably, differ as to the facts, we are of opinion the verdict ought not to be disturbed. "We the more easily adopt this opinion when we consider that the principal point in the cause, whether the vessel did actually sail on the 30 th September, or 1st of October, is a matter of summun jus, and is to be reckoned among the apices of the law, rather than a part 'of the substantial merits of the case; therefore the defendant takes nothing by his motion.
New trial refused.