## *BENDER v. FROMBERGER.

### Covenant.—Pleading.—Damages.

In an action of covenant, it is sufficient to assign the breach, in terms as general as those in which the covenant is expressed.

The breach assigned was, that the defendant was not seised of a good estate in fee, &c.; and the defendant pleaded *non infregit conventionem*, and performance, with leave, &c., upon which issues were joined: *held*, that they were sufficient for the court to enter judgment upon.

A covenant that one is seised of an indefeasible estate in fee, may be broken, without an eviction.

A special warranty in a deed, has not the effect of controlling a précedent general covenant.

The covenantee of title cannot recover the value of improvements made by him, after his purchase from the covenantor.[1]

COVENANT. On the trial of the cause, in March term, 1806, it appeared, that the defendant and his wife had sold and conveyed a tract of land to the plaintiff for $2390, by deed, dated the 8th of September 1797; and had therein covenanted that the defendant was lawfully seised of a good, sure and indefeasible estate of inheritance, in fee-simple, in the said land, and had good right, full power and authority, in his own right, to grant and convey the same to the plaintiff in fee. The deed, also contained a special warranty against the grantor and his heirs, and all persons claiming under them. Bender took possession of the premises and made considerable improvements, as well in fences and buildings, as in the cultivation of the soil; so that the property was valued, in May 1802, at $5000. An ejectment was brought, however, at the suit of Benjamin Hilton against Bender, in the circuit court of the United States; and after a trial, verdict and judgment for the plaintiff, an *hab. fac. possess.* issued, returnable to May term 1802, upon which the possession was delivered, on the 4th of February 1802.

Bender then instituted the present suit, in which the declaration stated the covenant that the defendant was seised of an indefeasible estate in fee-simple, and that he had a good right to convey the same to the plaintiff; and assigned as a breach, that the defendant was not so seised, nor had he good right to convey the said land in fee to the plaintiff: *profert* of the deed was made, but *oyer* was not demanded. The defendant pleaded *non infregit conventionem*, on which issue was joined; and also performance, with leave, &c., to which the plaintiff replied, generally, non-performance, and issue was thereupon joined. At the trial of the cause, in March term 1806, upon the recommendation of the court, and with the consent of the parties, a verdict was taken in these terms: "The jury find for the plaintiff $6232.50: but if the court shall be of opinion, that the plaintiff is not entitled to recover the value of the improvements made by him, after he purchased of the defendants, then they find damages $2979.14, and six cents costs."(a)

---

(a) At the trial of the cause, a question of some importance occurred. The defendant claimed under a sale, by the commonwealth, of the premises, as the forfeited estate of Joseph Griswold, who, it was alleged, had been attainted, by proclamation, during the revolutionary war. His counsel, with a view to maintain the validity of his title, offered to read the proclamation in evidence. The opposite counsel proved, that the defendant had due notice of Hilton's ejectment; took part in preparing evidence for

[1] S. P. Brown v. Dickerson, 12 Penn. St. 372;    68 Id. 400. And see Lanigan v. Kille, 97 Id. Cox v. Henry, 32 Id. 18; Terry v. Drabenstadt,    120.

Bender v. Fromberger.

*Before the argument on the point which the jury had thus submitted to the court, a motion was made in arrest of judgment, on the following grounds : 1st. That the declaration was vicious, inasmuch as it did not assign a legal breach of the covenant. 2d. That there was not, in any part of the pleadings, sufficient matter, for the court to render judgment in favor of the plaintiff. 3d. That it is apparent on the record, that the plaintiff has no cause of action.

In support of these objections, it was argued, for the *defendant :* 1st. That the declaration does not aver that the recovery in *Hilton's Lessee* v. *Bender* was upon a title paramount. (Freem. 122 ; Hob. 12 ; 4 Co. 80 ; Cro. Jac. 674–5 ; Hob. 34 ; Cas. temp. Hardw. 271 ; Cro. Eliz. 917 ; Cro. Jac. 315 ; Cro. Eliz. 823 ; Cro. Car. 5 ; Vaugh. 118 ; 2 Vent. 61 ; Cro. Jac. 444 ; 1 Mod. 292 ; 1 Lev. 301 ; 3 Mod. 135 ; 3 T. R. 584.) 2d. That although the modern authorities admit, that it is sufficient, if the breach is assigned in the same general words as the covenant; yet, in that case, it is necessary, that the replication should be more specific and particular. (Cro. Eliz. 544 ; Cro. Jac. 171 ; 4 T. R. 620.) For *non infregit conventionem* is no plea, unless the breach is assigned affirmatively. (Co. Litt. 303–6.) And it is a rule in pleading, that you cannot go to issue on a general averment of performance. (3 Woodes. 93 ; Cowp. 578.) 3d. That the declaration contains a *profert* of the deed ; and according to the practice of Pennsylvania, *oyer* must be presumed, *which spreads the deed upon the record. Then, as it will appear, that the deed contains a special [*438 warranty, in the conclusion, the antecedent express covenant that the

---

the trial ; and had, in fact, acceded to a settlement, in consequence of the eviction ; and they contended, therefore, that the verdict in that ejectment was conclusive to establish a defect of title. After argument (in which the plaintiff's counsel cited, Cro. Jac. 304 ; Sid. 289 ; 2 Show. 460 ; Bradshaw's case, 9 Co. 60 ; and the defendant's counsel cited, 1 Str 400 ; 2 Roll. Rep. 6, 28, 287 ; 8 T. R. 278), the chief justice delivered the unanimous opinion of the court :

TILGHMAN, Chief Justice.—Some difficulty has occurred in deciding this point ; but the court have formed an unanimous opinion, that the evidence offered by the defendant, to prove that he had a good title to the land in question, is inadmissible. The title has been already decided in an ejectment, the only mode in which title to land can be directly decided ; and of that ejectment, the defendant had full notice. If the defendant should now be permitted to give his title in evidence ; and the jury should find a verdict in favor of it, the plaintiff's remedy by action of covenant on the deed, would be gone ; and if his title should ultimately fail, on the trial of another ejectment, to be brought by him, he would lose both land and money. But on the other hand, if the plaintiff recovers in the present suit, it is in our power, by imposing terms upon him, to do justice to the defendant. Indeed, the plaintiff has made our interference unnecessary, by a voluntary offer to execute a conveyance to the defendant of all his right, upon receiving the damages awarded by the jury. He was not obliged (as the defendant's counsel allege) to tender this conveyance, before he brought the suit ; it is sufficient, if the conveyance is executed, when the defendant pays the damages.

We do not decide, whether the defendant might have gone into evidence of the title, if he had given notice to the plaintiff, immediately after Hilton's recovery, that he was dissatisfied with the verdict, and meant, at his own expense, to prosecute an ejectment against Hilton, to try the question a second time. But, so far from pursuing this course, the defendant's conduct has shown an acquiescence in the verdict and judgment which Hilton obtained.

grantor was seised of an indefeasible estate, &c., is thereby restrained and controlled. (3 Lev. 46 ; 1 Ibid. 57 ; Rep. temp. Finch 96 ; 2 Bos. & Pul. 13 ; 3 Ibid. 565, 573.) Thus, independent of general authorities, the words "grant, bargain and sell," which, by themselves, are declared in an act of assembly, to import a general warranty, have always been considered as qualified and limited, if the deed contains a subsequent special warranty. (1 Dall. Laws, 109.) And on this construction of the deed, the plaintiff had no cause of action, when the suit was instituted.

For the *plaintiff*, it was answered : 1st. That the declaration is correct, in technical form ; for, in covenant, the breach may be assigned in as general words, as the covenant. (6 Vin. 421, pl. 2 ; 9 Co. 60 ; Cro. Jac. 304 ; 6 Vin. 424, pl. 3 ; 2 Show. 460 ; Sir T. Raym. 14 ; Cro. Jac. 369 ; 2 Bac. Abr. 84 ; 6 Vin. Abr. 422, pl. 1 ; Hob. 12 ; 2 Bos. & Pul. 14, in note ; 3 Woodes. 92 ; 5 Bac. 58; 60.) 2d. That the cases cited for the defendant arose upon a covenant for quiet enjoyment, which cannot be broken without an actual eviction ; but a covenant of title may be broken without eviction, upon proof that the grantor had not an estate in fee ; and in an action for the breach, it is neither necessary to allege nor to prove an eviction. 3d. That the declaration assigns the breach on the first covenant only ; and as *oyer* was never prayed, the second covenant is not even before the court. (2 Saund. 228 ; 1 Ibid. 233 ; 1 Lev. 88 ; 1 Saund. 9, 307 ; 1 T. R. 149 ; 1 Str. 227.) Besides, the covenants, though they cannot be regarded as one (which was the case in 2 Bos. & Pul. 13), are neither inconsistent nor contradictory : the one being a covenant, that the grantor has a good estate ; the other being a covenant of warranty ; the latter is introduced into deeds by the scrivener, of course ; but the former is only inserted upon the agreement and instruction of parties. A special covenant in fact, may restrain an implied covenant ; but here are two express covenants, which may operate together ; and each should be construed most strongly against the grantor. (2 Keb. 10, 15 ; 1 Sid. 289 ; 1 Lev. 183 ; 1 Sid. 215.)

The chief justice, after stating the pleadings, and the reasons assigned in arrest of judgment, delivered the opinion of the court, in the following terms :

TILGHMAN, Chief Justice.—As to the first point, although it was opened by the defendant's counsel, yet, I think, in the course of the argument, it was nearly abandoned. It certainly has not been supported ; for many cases have been produced, proving that it is sufficient to assign the breach in terms as general as those in which the covenant is expressed ; and more than one *of those cases were upon the very same kind of covenants as the one now in question.

The second point amounts, in substance, to this, that the issues were altogether immaterial. It is an undoubted principle, that verdicts, after a trial of the merits of a cause, are, if possible, to be supported. For this reason, many things are good after verdict, which would be bad, on demurrer. Many things, not alleged in the pleadings, may be presumed to have been proved on the trial ; because, unless they had been proved, the jury could not, properly, have given a verdict in the manner they did. One of the authorities (a) cited by the plaintiff's counsel, went to the point ; that,

---

(a) 5 Bac. Abr., Pleas, tit. Immaterial and Informal Issues, p. 59, 60.

upon a breach assigned, that the defendant was not seised of a good estate in fee, &c., to which the defendant pleaded *non infregit conventionem*, and thereupon issue was joined, the issue, though informal, was sufficient for the court to enter judgment on. Now, this is the very same issue as one of those joined in this cause.

But let us consider the other issue, joined on the plea of performance, with leave, &c. This kind of plea is peculiar to Pennsylvania, and is unknown in England. It was invented, to save the trouble of special pleading, and has been sanctioned by too long a practice, to be now shaken. In fact, it gives the defendant every advantage which he could derive from special pleading, and saves all the labor and danger: for upon notice to the plaintiff, without form, he may give anything in evidence which he might have pleaded. A great number of issues, in actions of covenant, have been joined precisely as this is; and if this judgment may be arrested, on account of the immateriality of the issue, all judgments founded on similar issues, are liable to be reversed, on writs of error. In considering the present motion, the court know nothing but what appears on the record. Now, how can they say, that an issue is immaterial, in which the defendant might, for aught that appears, have given evidence of all those special matters, on which the merits of his defence rested.

The defendant has contended, that it ought to have appeared, either in the plea or the replication, that the plaintiff had been evicted. But it is to be observed, that if the cases cited by him are examined, they will be found to be most, if not all, of them, on covenants for quiet enjoyment where the covenant was not broken, without an eviction by better title. But a covenant that one is seised of an indefeasible estate in fee, may be broken without an eviction; and in such case, the jury will give such damages as they think proper. Upon the whole, I am clearly of opinion, that this issue is not immaterial.

I will now consider the defendant's third point, which is, that it appears, by the record, that the plaintiff has no cause of action. *The defendant's argument is founded on this—that the plaintiff, by making a [*440 *profert* of the deed, has brought its whole contents before the court; that part of its contents is a clause of special warranty, by which they say, the general covenant on which the plaintiff has declared, is qualified and restrained; and of course, that the plaintiff has no cause of action, because the defendant only warranted against himself, and those who should claim under him. To this, it has been answered, by the plaintiff's counsel, and, I think, truly, that, *oyer* not having been prayed, no part of the deed appears to the court, but that which the plaintiff has declared on; and consequently, the court can take no notice of the special warranty.[1] But I think it best to deliver my opinion on the effect of the special warranty, that the defendant may not be disquieted, by supposing that he had a good defence, which he has lost the advantage of by a slip of his counsel. I subscribe to the principle laid down by Lord ELDON, in the case of *Browning* v. *Wright* (2 Bos. & Pul. 14), cited on the part of the defendant, that where it manifestly appears, from a consideration of every part of the deed, that no more than a special warranty was intended, it shall be so construed, although the deed,

---

[1] Mansley *v.* Smith, 6 Phila. 223.

in one part, contains words of covenant of more general import.[1] To this rule, I add the two following ones: that, in construing a deed, no part shall be rejected, unless it produces contradiction or absurdity ; and that, in doubtful cases, a deed is to be construed in favor of the grantee. The deed in question contains a conveyance by the words grant, bargain and sell ; a covenant that the grantor is seised of a good estate in fee-simple, subject to no incumbrances, but a certain ground-rent; and a covenant of special warranty.

It has been the prevailing opinion, that by virtue of an act of assembly, passed in the year 1715 (1 Dall. Laws, 109, § 6), the words "grant, bargain and sell," have the force of a general warranty, unless restrained by subsequent expressions. To qualify the general warranty, it has been the custom of scriveners, to insert a clause of special warranty. And, I believe, it is inserted, pretty much as a matter of course, unless in cases where the parties agree on a general warranty. I believe too, that in Pennsylvania the greater part of conveyances have, as Mr. *Ingersoll* has stated, been made with special warranty. Still, it remains to be considered, what was the intent of the grantor, in the present instance ? The defendant contends, that his intent was, to give no more than a special warranty, because the clause of special warranty is inconsistent with and contradictory to a general warranty. Now, in this, I cannot agree with him. It is certain, that the special warranty and more, is included in the general one. It is an inaccurate mode of conveyancing ; but there is no absurdity or contradiction in making one covenant against yourself and your heirs, and another against all *441] *mankind. The special warranty was unnecessary, and is to be attributed to the ignorance of the scrivener, who, probably, thought it was a matter of course, without intending to affect the more general preceding covenant; or, perhaps, he might think it necessary to guard against the effect of the words "grant, bargain and sell," used in the first part of the deed; because the estate was subject to a ground-rent, as appears from the general covenant, in which it is said, that the estate is free from all incumbrances, except the said ground-rent. It has been urged, that it is all one covenant, because the special warranty is connected with the preceding general covenant, by the words "and that." It is very common to connect a covenant of warranty and a covenant for further assurance by these expressions. But what I rely on, is, the intent of the parties, manifested in the deed, considered altogether. I do not conceive it is possible, for a man of common sense to declare, that he engages that he had a perfect estate in fee-simple, and had a good right to convey such perfect estate, without intending to warrant to a greater extent than against himself and his heirs. There are no technical expressions, but such as every man understands, which is not the case with a special warranty. To a common man, it is not very intelligible, that there should ever be occasion to warrant and defend against himself and all persons claiming under him ; for it is very natural to suppose, that when a man has used words sufficient to convey his estate to a third person, he has necessarily done enough to bar himself and all persons claiming under him, without calling in the aid of a special warranty. In short, the insertion of the clause of special warranty is generally the act

---

[1] An express covenant qualifies and restrains the generality of an implied one. Weiser *v.* Weiser 5 Watts 279. But see Funk *v.* Von eida, 11 S. & R. 109.

Bender v. Fromberger.

of scriveners; but I presume, that no scrivener could be so stupid as to insert a covenant, that "the grantor was seised of an indefeasible estate in fee," unless he had been told by the parties, that a general warranty was intended. I am, therefore, of opinion, that the special warranty in this deed, has not the effect of controlling the precedent general covenant, and that judgment should be entered for the plaintiff.

It is proper to add, that after the conclusion of the argument last night, I consulted with my brother YEATES, who concurs with my opinion, both with respect to the pleadings and the construction of the deed.

### SAME CAUSE.

THE case now came before the court, on the point submitted by the verdict; and this turned upon the question, whether, in an action of covenant, founded upon a deed, in which the grantor covenants that he has a good title to the land conveyed, the grantee, being evicted, is entitled to recover the price of the premises, *at the date of the deed, or the improved value, at the time of the eviction? [*442

For the *plaintiff*, it was contended, that the measure of damages on all covenants, is the amount of the loss actually sustained, and though it would seem from the old books, that, in cases of warranty, the recovery is to be according to the value of the land, at the time of the warranty; it was a recovery, in those cases, of land only, and not (as in this case) of money for damages. This position was illustrated and supported by an elaborate argument, and these authorities: 2 Bl. Com. 299, 300, 304; 22 Vin. 145–6, "Vouchee;" 3 Bl. Com. 156; 1 Bac. Abr. 526; 3 Woodes. 91–2; 1 Ld. Raym. 107; 2 Ibid. 1126; T. Raym. 77; 30 Edw. III., 14, 6; 19 Hen. VI., 45–6; Ibid. 61; Sayer on Dam. 3, 4, 5, 6; 2 Caines 111; Bay 18, 263.

For the *defendant*, it was taken as conceded ground, that on a warranty, strictly speaking, the value of the land, at the date of the warranty, could alone be recovered, according to the law of England; and it was contended, that there was no legal or equitable distinction between that case and the general case of covenant, further than the enlargement of the remedy; which was limited by the former, to a recovery in land; but by the latter, the personal estate also becomes liable. 2 Bl. Com. 304; Godb. 152; 1 Johns. 379.

The opinion of the court, upon great consideration, was delivered, at an adjourned session, on the 17th of January 1807. The chief justice, after stating the facts, proceeded in the following terms:

TILGHMAN, Chief Justice.—The question submitted to us by the jury, has never been decided in this court. It is of importance, and has been well argued.

It may be taken for granted, that on a strict warranty, where the remedy for the party who loses the lands, is either by *voucher*, or writ of *warrantia chartæ*, the recovery is only according to the value of the land, at the time the warranty was created. This is conceded by the plaintiff's counsel, and very properly; for many authorities were cited directly to the point. But this kind of warranty, which is a covenant real, has long ceased, and has been succeeded by the covenants personal, introduced into modern conveyances. The latter have two advantages: the remedy by action of covenant is more easy in its form, and more comprehensive in its effects;

for it extends to the personal property of the warrantor, in the hands of his executors ; whereas, the ancient recovery in value, was confined to the land. I know of no case in England, where it has been decided, whether a recovery in an action of covenant, could be carried so far as to include damages for improvements made after the purchase; but I must suppose, that Sir William *443] Blackstone was of opinion, that such damages could *not be included, otherwise, he ought certainly to have mentioned it, when he was comparing the ancient warranty with the modern covenants, which, he says, have superseded them. His expressions are these : " If he covenants for his executors and administrators, his personal assets, as well as his real, are pledged for the performance of the covenant, which makes such covenant a better security than any warranty, and it has, therefore, in modern practice, totally superseded the other." A general warranty is as comprehensive in its expressions, as any words made use of in modern covenants. It undertakes to defend the land to the warrantee, his heirs and assigns, against all persons whatever. It is in its nature a covenant real; and since the recovery on it extended no further than the value of the land, at the time of the warranty made, the inference is very strong, that in these personal covenants, which have succeeded to it, the extension shall be no greater. But the plaintiff's counsel contend, that the reason why the recovery in value, on the ancient warranty, was confined to the value, at the time of its creation, is, because in real actions, no damages can be recovered. This reason is unsound. The value, at the time of the *voucher*, might have been recovered, without recovering damages ; and this is evident from some of the cases which have been cited; particularly, the case of *Ballet* v. *Ballet ;* where it is decided, that in a *warrantia chartæ*, if there be new buildings, of which the warranty is demanded, which were not at the time of the warranty made, the defendant must take care to show the special matter, and enter into the warranty, only for so much as was at the time of the making of the deed, otherwise, the plaintiff will recover, according to the value, at the time of entering into the warranty. The true reason, therefore, appears to be, that the intention of the parties was so understood, that the warranty should be limited to the value of the land, at the time of executing the deed.

The plaintiff's counsel cited a case from 22 Vin. Ab. 145, pl. 5, in order to prove, that upon the implied warranty, which arises on an exchange of land, the recovery in value, after eviction, is according to the actual loss sustained. As this seemed to be at variance with the general principles of warranty, I have examined it, since the argument of the cause, and find that the case was not properly explained. The words of the abridgment are as follows : " If a man recovers in value, upon a warranty in law, on an exchange, he shall have in value, according to the value which he has lost." In support of this, the *Case of Bustard*, 4 Co. 121, is cited. In the first place, it is to be remarked, that in the marginal note to pl. 6, in the same page of Viner, it is said, that the same case is reported in Cro. Eliz., Moore, and Yelverton, in neither of which is such point mentioned ; and it is certain, from my Lord Coke's report, that the decision must have been extra-judi- *444] cial ; for *Bustard's case* turned on a different point. *Bustard being evicted of the land received by him in exchange, entered upon that which he had given in exchange, by virtue of the implied condition in law which is annexed to an exchange ; and a re-entry was made on him ;

Bender v. Fromberger.

in consequence of which he brought an action of trespass; and whether he could recover in that action, was the question: so that the court had nothing to do with the value of the land. But according to my Lord Coke's account of it, what they did decide concerning the value, is not applicable to the point now before the court. The decision is—that if A., who has received three acres in exchange, is impleaded for one acre, and vouches B. from whom he received them, and then the demandant recovers the one acre, A. shall recover in value from B., according to the loss, that is, one acre; but not a word is said concerning the time, to which the value of this acre is to relate. And that is the only question now under consideration.

It has been contended, that the true measure of damages, in all actions of covenant, is the loss actually sustained. But this rule is laid down too generally. In an action of covenant for non-payment of money on a bond or mortgage, no more than the principal and legal interest of the debt can be recovered, although the plaintiff may have suffered to a much greater amount by the default of payment. The rule contended for by the plaintiff's counsel, in its utmost latitude, applied to covenants like the present, would, in many instances, produce excessive mischief. Indeed, the counsel have, in some measure, given up this rule, by confessing, that when buildings of magnificence are erected to gratify the luxury of the wealthy, it would be unreasonable to give damages to the extent of the loss; but the ruinous consequences would not be less to many persons, who have sold lands, on which no other than useful buildings have been erected. The rise in the value of land, not only in towns on the sea coast, but in the interior part of the United States, is such, that it can hardly be supposed, any prudent man would undertake to answer the incalculable damages, which might overwhelm his family, under the construction contended for by the plaintiff. I have taken pains to ascertain the opinion of lawyers in this state, prior to the American revolution, and I think myself warranted in asserting, from the information I have received, that the prevailing opinion, among the most eminent counsel, was, that the standard of damages was the value of the land, at the time of making the contract. The title of land rests as much within the knowledge of the purchaser, as the seller; it depends upon writings, which both parties have an equal opportunity of examining. If the seller makes use of any fraud, concealment or artifice, to mislead the purchaser, in examining the title, the case is different, he will then be answerable for all losses which may ensue.

Cases have been cited from the civil law; but I throw them out of view, because this case can be decided only on the principles of the common law. *Cases have also been cited from the law reports, in the states of [*445 South Carolina and New York. Though they are not authority in this court, yet we shall always be happy to receive information of the opinions of the learned judges in our sister states, and always treat them with due respect. Upon the point now in question, it seems, there is a difference of opinion. In South Carolina, it has been held, that the plaintiff is entitled to recover, according to the value at the time of the action: in New York, that he can only recover according to the value at the time of the contract. On these cases, I will only remark, that the opinions of the judges in South Carolina, having been given during the hurry of a jury trial, do not appear to have been founded on such mature deliberation as those of the New

York judges, who made their decision in the supreme court, sitting in bank.

Upon the whole, I am of opinion, that, by the true construction of the covenants in the case before us, the plaintiff is not entitled to recover the value of the improvements made by him, after he purchased of John Fromberger, and therefore, that judgment be entered for $2979.14, and costs. I am authorized to say, that Judge YEATES, whose absence is occasioned by sickness, concurs in this opinion.

SMITH, Justice.—The question now to be decided by this court is of great importance. I understand, that it has long been discussed among the most eminent counsel in Pennsylvania, and opinions have been given by some of them ; but that it never has received a judicial decision. I believe, on inquiry, that it never came before any court in Pennsylvania, until the 24th of May 1804, when it came before the circuit court, holden for the county of Northumberland, by Judge BRACKENRIDGE and myself, in the case of *William Bonham* v. *John Walker's administrator.* We said, that " it is an important question, and it is proper that it should receive a solemn decision in bank ; we, therefore, propose, that the measure of damages should be left to the jury, on each of these grounds, which is done accordingly." The jury found " a verdict for the plaintiff, for $1092.17 damages, on the ground of the original purchase-money ; and on the ground of the value of the land at the time of the execution (eviction) $1602.21."

After my return, I was induced to make diligent inquiry, whether the point had ever been decided, and what had been the general opinion of eminent counsel on it, and the result was that expressed by the chief justice. Upon a very attentive perusal of that cases on the subject ; the notes of which, taken by me then, and annexed to that case, are now before me : they did not, in my opinion, warrant me in drawing a different conclusion ; but I saw difficulties, whether the question was decided one way or the other, which made me anxious to hear it deliberately argued: ready to *alter my opinion, if I should discover, that it was not well founded ; or if the opposite opinion should be supported by law, be more conducive to the general interest, and be more agreeable generally to the intentions of the parties to such contracts.

I have heard it very well argued. If the very well-arranged and able argument of the ingenuous young gentleman who began (Mr. Sergeant) has not been able to shake the opinion which I had formed, I am induced to believe that it is well founded, on solid principles of law. I must, therefore, adhere to it upon the present occasion ; it not being suggested that there was any fraud or concealment on the part of the vendor, nor any knowledge, when he sold, of any defect in his title. Had any of these circumstances occurred, I should be of opinion, that he would be liable to the amount of the loss.

Although the vendor, on a covenant like that in question, be liable to damages only to the value at the time of the deed ; yet, he may enter into such a special express covenant, as will make him liable to the value at the time of eviction, and so much will the vendee, on such event, be entitled to. In the present case I agree, that judgment be entered for the plaintiff for $2979.14.

BRACKENRIDGE, Justice.—I concur in the decision of the other judges, for the reasons which have been assigned.

Judgment to be entered in favor of the plaintiff, for $2979.14, and costs. (*a*)

*Lewis, Rawle* and *J. Sergeant,* for the plaintiff.
*McKean* (Attorney-General) and *Ingersoll,* for the defendant.

---

(*a*) See, on the subject of covenants of title, 2 Wheat. 62, note *c.*